UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| NORMA L. COOKE, | ) |  |
|---|---|---|
|  | ) |  |
| **Plaintiff,** | ) |  |
|  | ) | **No. 15 C 817** |
| v. | ) |  |
|  | ) | **Chief Judge Rubén Castillo** |
| JACKSON NATIONAL LIFE | ) |  |
| INSURANCE COMPANY, | ) |  |
|  | ) |  |
| **Defendant.** | ) |  |

## MEMORANDUM OPINION AND ORDER

Norma Cooke ("Plaintiff") brought this action against Jackson National Life Insurance Company ("Defendant") for breach of a life insurance policy issued to her late husband. *Cooke v. Jackson Nat'l Life Ins. Co.*, 243 F. Supp. 3d 987, 990 (N.D. Ill. 2017). The Court granted summary judgment in Plaintiff's favor, and it also ruled that Plaintiff was entitled to an award of costs and attorneys' fees for preparing and responding to motions for summary judgment. *Id.* at 1003-08. Presently before the Court are Plaintiff's bill of costs and motion for attorneys' fees pursuant to Local Rules 54.1 and 54.3, respectively. (R. 101, Mot.; R. 102, Bill of Costs.) For the reasons set forth below, the costs requested in Plaintiff's bill of costs are granted. Plaintiff's motion for attorneys' fees is granted in part and denied in part as set forth herein.

## RELEVANT FACTS

The following facts are undisputed unless otherwise stated. During the pendency of this case, Plaintiff was represented by three attorneys: Steven Pollack ("Pollack"), Jeffery Marks ("Marks"), and Bryan White ("White"). (*See* R. 101-1, Rule 54.3 Statement at 1.) On August 24, 2014, Plaintiff entered into an attorney-client agreement with Pollack, a sole practitioner who has been licensed to practice law in Illinois since 2006. (R. 101-2, Pollack Decl. at 1; R. 101-3,

Pollack Agreement at 2.) The agreement provided that Plaintiff would pay Pollack a retainer fee of $3,000, and that Pollack would bill Plaintiff $325 an hour until the retainer fee was depleted. (R. 101-3, Pollack Agreement at 1.) Thereafter, Pollack would be paid for his services by way of a contingency fee of 33 percent of any amount recovered against Defendant. (*Id.*) The agreement also provided that "[i]n the event that Attorneys' fees become recoverable from Defendants in addition to damages, Attorney fees will be calculated at $325.00 per hour." (*Id.*)

Pollack's agreement with Plaintiff allowed him to hire "any associates he [might] choose" to prosecute the case. (*Id.*; R. 101-2, Pollack Decl. at 2.) Pursuant to the agreement, Pollack associated with the law firm of Busse, Busse, and Grasse, P.C. ("BBG") because Pollack was not a member of the federal trial bar, but Marks—an attorney at BBG—was a member of the federal trial bar. (R. 101-2, Pollack Decl. at 2.) Marks has been practicing law since 2006. (R. 101-7, Marks Decl. at 1.) He has worked with Pollack on several other cases, and for these cases, they mostly billed for their services on a contingency basis. (*Id.* at 1-2.) White, who was working for BBG at the time, also worked on Plaintiff's case. (*Id.* at 2.) White began practicing law in 2011. (*Id.*)

Before this case was filed, Plaintiff's $3,000 retainer was depleted. (R. 101-2, Pollack Decl. at 2-3.) On April 26, 2017, after entering summary judgment in Plaintiff's favor, the Court ruled that Plaintiff was entitled to $191,362.06 in insurance policy proceeds plus 10 percent simple annual interest since September 10, 2013. (R. 72, Order at 6.) On August 15, 2017, Defendant paid Plaintiff this amount, and once Pollack received that payment on Plaintiff's behalf, he credited back to Plaintiff the $3,000 retainer that she had previously paid. (R. 101-2, Pollack Decl. at 3.)

Plaintiff attaches to its motion for attorneys' fees a "Fees Matrix,"[1] and a "United States Consumer Law Attorney Fee Survey Report." (R. 101-5, Fee Matrix; R. 101-6, Survey.) The fee matrix estimates that a reasonable hourly rate for an assistant U.S. Attorney working in the Civil Division of the U.S. Attorney's Office for the District of Columbia is as follows: $284 for an attorney with less than 2 years' experience; $315 for 2-3 years of experience; $325 for 4-5 years of experience; $332 for 6-7 years of experience; $386 for 8-10 years of experience; and $455 for 11-15 years of experience.[2] (R. 101-5, Fee Matrix at 1.) The fee matrix, however, provides that it has "been prepared by the Civil Division of the United States Attorney's Office for the District of Columbia . . . to evaluate requests for attorney's fees in civil cases in District of Columbia courts." (*Id.*) It also provides that it "has not been adopted by the Department of Justice generally for use outside the District of Columbia[.]" (*Id.*)

The survey report submitted with Plaintiff's motion was prepared by a private attorney, Ronald Burdge, who states that the survey "is the only Consumer Law survey whose methodologies have been supported by the National Association of Legal Fee Analysis, a non-profit professional association for the legal fee analysis field." (R. 101-6, Survey at 1.) The results of the survey were obtained by "employing an online, email, and telephone survey representing about 4,500 members of the National Association of Consumer Advocates and the National Association of Consumer Bankruptcy Attorneys and other known attorneys practicing in the field of Consumer Law identified through Avvo.com, Lawyers.com, and court filings

---

[1] This fee matrix has been referenced in several other fee disputes and is commonly referred to as the "Laffey Matrix." *See Obrycka v. City of Chicago*, No. 07 C 2372, 2013 WL 1749803, at *3 (N.D. Ill. Apr. 23, 2013) (citation omitted) (explaining that the "Laffey Matrix is a chart of hourly rates for attorneys and paralegals in the Washington, D.C. area that was prepared by the United States Attorney's Office for the District of Columbia").

[2] These rates are for 2015-16; the estimated hourly rates for successive years are slightly higher. (R. 101-5, Fee Matrix at 1.)

around the country." (*Id.*) The survey was conducted in 2015 and 2016, and therefore reports on typical hourly rates for attorneys during those years. (*Id.*) For a "consumer law" attorney, which the survey defines as an attorney that practices in "an area of law dealing with issues arising from transactions involving one or more persons," the survey found that the average hourly rate for an attorney in Chicago was as follows: $250 for attorneys with less than one year of experience; $300 for 1-3 years of experience; $305 for 3-5 years of experience; $429 for 6-10 years of experience; and $447 for 11-15 years of experience. (*Id.* at 7, 224.)

## PROCEDURAL HISTORY

On August 15, 2016, Plaintiff filed a motion for summary judgment arguing that she was entitled to judgement as a matter of law on her claim that Defendants breached a life insurance policy issued to her late husband. (R. 42, Mot. for Summ. J. at 1.) On March 20, 2017, the Court granted summary judgment in Plaintiff's favor and awarded her damages and attorneys' fees "for the cost of preparing and responding to" motions for summary judgment. *Cooke*, 243 F. Supp. 3d at 1008. On April 3, 2017, Plaintiff filed a bill of costs, which sought compensation for administrative costs and attorneys' fees that Plaintiff had incurred in this case. (R. 64, Bill of Costs at 1.) Plaintiff also filed a motion to amend the judgment so that it would include an award of interest on the principal amount of Plaintiff's judgment. (R. 61, Mot. to Amend at 7.)

On April 26, 2017, the Court ruled on Plaintiff's motion to amend the judgment, determining that Plaintiff was entitled to $191,362.06 in insurance policy proceeds plus 10 percent simple annual interest since September 10, 2013. (R. 72, Order at 6.) Defendant appealed the Court's orders on Plaintiff's motion to amend the judgment and Plaintiff's motion for summary judgment. *Cooke v. Jackson Nat'l Life Ins. Co.*, 882 F.3d 630, 632 (7th Cir. 2018). The U.S. Court of Appeals for the Seventh Circuit dismissed the appeal for lack of jurisdiction and

4

concluded that there was no final judgment from which to appeal. *Id.* The Seventh Circuit reasoned that although the Court had decided the exact amount owed to Plaintiff for breach of the insurance policy, it had not yet fixed the amount that Defendant owed for attorneys' fees. *Id.* Accordingly, dismissal of Defendant's appeal was appropriate. *Id.* at 633.

Given the intervening appeal as well as Plaintiff's failure to file a separate bill of costs and motion for attorneys' fees pursuant to the Court's local rules, on August 22, 2018, the Court ordered Plaintiff to file a new bill of costs pursuant to Local Rule 54.1 and a separate motion for attorneys' fees pursuant to Local Rule 54.3. (R. 100, Order at 4.) On September 5, 2018, Plaintiff filed her motion for attorneys' fees. (R. 101, Mot. at 1.) Plaintiff requests $115,912.70 in attorneys' fees. (*Id.* at 8.) Plaintiff claims that this amount is reasonable because it is supported by evidence of the prevailing market rate for attorneys' fees. (*Id.* at 1-5.)

In response, Defendant argues that it should not be liable for $115,912.70 in attorneys' fees, and that it should instead pay no more than $41,957.50. (R. 103, Resp. at 2-5.) Defendant maintains that $41,957.50 is the amount that Plaintiff should be awarded for briefing the cross-motions for summary judgment at the $325 hourly rate set forth in the contract between Plaintiff and her attorneys. (*Id.*)

On September 5, 2018, Plaintiff filed a new bill of costs. (R. 102, Bill of Costs.) The bill of costs seeks $1,903.50 in costs, and those claimed costs include $400 for clerk fees as well as $1,503.50 for transcript fees. (*Id.* at 1.) The Court ordered Defendant to file a response to the bill of costs by September 12, 2018. (*See* R. 100, Order at 4.) Defendant, however, has not filed any response to Plaintiff's bill of costs.

## LEGAL STANDARD

To fix the amount of attorneys' fees owed to Plaintiff, the Court begins by determining the lodestar amount. *Stragapede v. City of Evanston*, 215 F. Supp. 3d 708, 710 (N.D. Ill. 2016). The lodestar is calculated by multiplying the reasonable market rate for an attorney's services by the number of hours he or she reasonably expended. *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 639 (7th Cir. 2011). "The fee applicant bears the burden of producing satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community." *Id.* at 640 (alteration, citation, and internal quotation marks omitted). If the fee applicant satisfies this burden, the burden then shifts to the opposing party to offer evidence that sets forth "a good reason why a lower rate is essential." *Id.* (citation omitted). Once the lodestar amount has been determined, the Court "may then adjust that figure to reflect various factors including the complexity of the legal issues involved, the degree of success obtained, and the public interest advanced by the litigation." *Schlacher v. Law Offices of Phillip J. Rotche & Assocs., P.C.*, 574 F.3d 852, 856-57 (7th Cir. 2009). "[F]ederal district courts have considerable discretion in granting an award of attorneys' fees." *Stragapede*, 215 F. Supp. 3d at 710; *see also Farfaras v. Citizens Bank & Tr. of Chi.*, 433 F.3d 558, 569 (7th Cir. 2006) (noting that district courts are afforded "significant deference in fee matters" (citation omitted)).

Turning to the standard of review for Plaintiff's bill of costs, "[u]nless a federal statute, [the federal] rules, or a court order provides otherwise, costs . . . should be allowed to the prevailing party." FED. R. CIV. P. 54(d)(1); *see also Merix Pharm. Corp. v. Clinical Supplies Mgmt., Inc.*, 106 F. Supp. 3d 927, 941 (N.D. Ill. 2015) (observing that there is a "presumption that the losing party will pay costs" (citation omitted)). The decision of whether to award costs is within the Court's broad discretion. *See In re Dairy Farmers of Am., Inc.*, 80 F. Supp. 3d 838,

854 (N.D. Ill. 2015) ("A district judge's award of costs is the type of discretionary ruling to which the Seventh Circuit gives virtually complete deference." (alterations, citation, and internal quotation marks omitted)).

## ANALYSIS

As a preliminary matter, Plaintiff's request for costs is granted. Defendant did not file a response to Plaintiff's bill of costs as ordered by the Court and does not otherwise dispute Plaintiff's claimed costs. (*See* R. 100, Order at 4.) Where a party does not object to costs referenced in a bill of costs and the costs requested are taxable, those costs are duly awarded. *See Maxwell v. KPMG LLP*, No. 03 C 3524, 2009 WL 3598474, at *1 (N.D. Ill. Oct. 23, 2009) (awarding a claimed cost because it was "taxable and unopposed"). Because the claimed costs—Plaintiff's fees paid to the clerk and transcript costs—are unopposed and taxable pursuant to 28 U.S.C. § 1920(1)-(2), the Court will award Plaintiff all of its requested costs. *See id.*; 28 U.S.C. § 1920(1)-(2).

Unlike with the bill of costs, Defendant vigorously disputes the amount of Plaintiff's claimed attorneys' fees. (R. 103, Resp. at 2-5.) To resolve this dispute, the Court must first determine the lodestar, which is ascertained by multiplying the number of hours reasonably expended by the attorneys' reasonable hourly rates. *Pickett*, 664 F.3d at 639. The Court first determines the amount of time each of Plaintiff's attorneys reasonably expended on the motions for summary judgment because the Court only awarded attorneys' fees to Plaintiff "for the cost of preparing and responding to the . . . cross-motions for summary judgment." *Cooke*, 243 F. Supp. 3d at 1008. Next, the Court will determine a reasonable hourly rate for each of Plaintiff's attorneys. *Pickett*, 664 F.3d at 639. Finally, the Court will calculate the final lodestar amount by

multiplying the amount of hours reasonably expended by the attorneys' reasonable hourly rates. *Id.*[3]

## I. Hours Reasonably Expended by Each Attorney

The Court may only award attorneys' fees for hours that are "reasonably expended" on a case; in other words, fees may only be awarded for hours that are not "excessive, redundant, or otherwise unnecessary[.]" *Gibson v. City of Chicago*, 873 F. Supp. 2d 975, 985 (N.D. Ill. 2012). Here, Plaintiff was only awarded attorneys' fees for hours that were reasonably spent "preparing and responding to" cross-motions for summary judgment. *Cooke*, 243 F. Supp. 3d at 1008. Accordingly, the Court will limit its calculations to those hours. *See id.*; *Gibson*, 873 F. Supp. 2d at 985.

Upon reviewing the timesheets for each attorney, the Court concludes that Pollack reasonably spent 114 hours on work related to the motions for summary judgment, which are reflected in his time entries from July 2, 2016, until September 8, 2016. (R. 101-4, Pollack Timesheet at 2-3.) Marks reasonably spent 12.6 hours, which is reflected in his time entries from July 29, 2016, until September 6, 2016 (excluding a time entry related to settlement discussions). (R. 101-8, Marks Timesheet at 1-2.) White reasonably spent 5.2 hours preparing and responding to motions for summary judgment, which is reflected in his time entries from August 2, 2016, until September 6, 2016. (R. 101-9, White Timesheet at 1.)

---

[3] Because neither party argues that the final lodestar should be adjusted "to reflect various factors including the complexity of the legal issues involved, the degree of success obtained, and the public interest advanced by the litigation," *see Schlacher v. Law Offices of Phillip J. Rotche & Assocs., P.C.*, 574 F.3d 852, 856-57 (7th Cir. 2009), the Court ends its analysis with a calculation of the lodestar. The Court also finds that no adjustment of the lodestar is necessary given Plaintiff's attorneys' success in this litigation. *See Montanez v. Simon*, 755 F.3d 547, 556 (7th Cir. 2014) ("A plaintiff who achieves excellent results should receive the entire lodestar[.]" (citation and internal quotation marks omitted)).

Plaintiff's claimed hours are far in excess of these hours, but Plaintiff's claimed hours include tasks such as the preparation of the present fee motion, preparation of a motion to stay, preparation of Plaintiff's motion to alter the judgment, and other tasks wholly unrelated to the motions for summary judgment. (*E.g.*, R. 101-4, Pollack Timesheet at 3-5.) The Court only awarded fees "for the cost of preparing and responding to the cross-motions for summary judgment," and therefore the Court rejects the additional hours claimed by Plaintiff. *Cooke*, 243 F. Supp. 3d at 1008.

## II. Reasonable Hourly Rate

Next, the Court determines a reasonable hourly rate for Plaintiffs' attorneys. "[A] reasonable hourly rate is one that is derived from the market rate for the services rendered." *Pickett*, 664 F.3d at 640 (citation and internal quotation marks omitted). The Court "presume[s] that an attorney's actual billing rate for similar litigation is appropriate to use as the market rate." *Id.* If an attorney uses contingent fee arrangements, the "next best evidence" of the attorney's market rate is "evidence of rates similarly experienced attorneys in the community charge paying clients for similar work and evidence of fee awards the attorney has received in similar cases." *Johnson v. GDF, Inc.*, 668 F.3d 927, 933 (7th Cir. 2012) (citation omitted). "It is the fee applicant's burden to establish his or her market rate; if the applicant fails, the district court may make its own rate determination." *Id.*

An extensive analysis on a reasonable hourly rate is not necessary here because Plaintiff's fee agreement with Pollack billed Plaintiff at the hourly rate of $325 until her retainer fee was depleted, and it also provided that "[i]n the event that Attorneys' fees become recoverable from Defendants in addition to damages, Attorney fees will be calculated at $325.00 per hour." (R. 101-3, Pollack Agreement at 1.) The agreement covered "any associates he [might] choose" to prosecute the case, who in this case, were Marks and White. (*See id.*) Pollack

9

also represents that "my contracts regularly call for billing against the retainer at $325 per hour[.]" (R. 101-3, Pollack Decl. at 2.) The Court, therefore, concludes that $325 per hour is the reasonable hourly rate for all of Plaintiff's attorneys because it is the actual billing rate spelled out in their fee agreement with Plaintiff, and it is the only persuasive evidence of a market rate that Plaintiff provides. *See Stark v. PPM Am., Inc.*, 354 F.3d 666, 675 (7th Cir. 2004) ("[T]he best evidence of the market value of legal services is what people will pay for it."); *Mathur v. Bd. of Trs. of S. Ill. Univ.*, 317 F.3d 738, 743 (7th Cir. 2003) ("Only if an attorney is unable to provide evidence of her actual billing rates should a district court look to other evidence, including rates similar experienced attorneys in the community charge paying clients for similar work." (citation and internal quotation marks omitted)); *Wells v. City of Chicago*, 925 F. Supp. 2d 1036, 1040 (N.D. Ill. 2013) ("If the attorney has an actual billing rate that he or she typically charges and obtains for similar litigation, that is presumptively his hourly rate.").

Plaintiff argues that a fee award must be in line with what attorneys of similar experience are charging, but she provides no evidence that the higher hourly rates she requests are in line with hourly rates charged by attorneys of similar experience, skill, and reputation in the Chicago area. (*See* R. 101, Mot. at 2-3.) The evidence provided by Plaintiff that supports hourly rates higher than $325 is simply not persuasive. First, she relies on the fee matrix attached to her motion, which is an estimate of the reasonable hourly rate for an assistant U.S. Attorney of the Civil Division for the U.S. Attorney's District of Columbia office. (R. 101-5, Fee Matrix at 1.) Courts in this district have repeatedly ascribed little evidentiary weight to this fee matrix in their determination of a reasonable hourly rate for Chicago attorneys. *See Obrycka v. City of Chicago*, No. 07 C 2372, 2013 WL 1749803, at *3 (N.D. Ill. Apr. 23, 2013) (noting that the "Laffey Matrix is a chart of hourly rates for attorneys and paralegals in the Washington, D.C. area that

10

was prepared by the United States Attorney's Office for the District of Columbia" and that "the Laffey Matrix does not take into account an individual attorney's ability, experience, or reputation, and thus does not lend support under the circumstances" (citations omitted)); *Wells*, 925 F. Supp. 2d at 1040 ("Given . . . the Seventh Circuit's expressed preference for other, more direct measures of reasonable hourly rates, the Court does not find it appropriate to rely on the Laffey Matrix as evidence supporting plaintiff's proposed hourly rates."); *Gibson*, 873 F. Supp. 2d at 984 ("[S]everal courts in this District have noted that the Laffey Matrix rates are significantly higher than those customarily charged in this District, and have accordingly given little weight to the Laffey Matrix." (citation and internal quotation marks omitted)).

The other piece of evidence that Plaintiff submits to support higher hourly rates—the "United States Consumer Law Attorney Fee Survey Report"—is not persuasive because it calculates the average rate for a vaguely and expansively defined group of attorneys practicing in the area of "consumer law," whereas Plaintiff's attorneys in this case are insurance attorneys. (R. 101-6, Survey at 1, 224; R. 101-2, Pollack Decl. at 1-2; R. 101-7, Marks Decl. at 1.) Plaintiff presents no evidence that "consumer attorneys" garner hourly rates similar to those of insurance attorneys. The Court, therefore, affords the survey little weight and finds that Plaintiff's attorneys are not entitled to a higher hourly rate based on this survey. *See Stockman v. Glob. Credit & Collection Corp.*, No. 14 C 6862, 2015 WL 4999851, at *4 (N.D. Ill. Aug. 21, 2015) (observing that reliance on such survey reports is "problematic" because "reasonableness is not determined by averaging the rates charged by all attorneys in a certain geographic area"; rather it "involves more focused factors, including the experience, reputation, and ability of the plaintiff's attorney and the novelty and difficulty of the question"); *see also Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984) ("To inform and assist the court in the exercise of its discretion, the burden is on the fee

11

applicant to produce satisfactory evidence . . . *that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation*." (emphasis added)). In summary and after weighing all of the evidence submitted, the Court finds that the fee matrix and survey report have little evidentiary weight, and the Court awards Plaintiff attorneys' fees at an hourly rate of $325 for each attorney based on Pollack's fee agreement with Plaintiff and his regular billing practices. *See Mathur*, 317 F.3d at 743; *see also Moriarty v. Svec*, 233 F.3d 955, 965 (7th Cir. 2000) ("The lawyer's regular rate is strongly presumed to be the market rate for his or her services.").

### III. Total Amount of Fees Awarded

Based on the analysis above, the Court awards a total of $42,835 in attorneys' fees to Plaintiff. This award is based on the following calculations, consistent with the Court's reasoning set forth above:

| **Attorney Name** | **Hours Expended** | **Reasonable Rate** | **Total Fee Award** |
|---|---|---|---|
| Steven Pollack | 114 | $325.00 | $37,050.00 |
| Jeffrey Marks | 12.6 | $325.00 | $4,095.00 |
| Bryan White | 5.2 | $325.00 | $1,690.00 |
| **Grand Total:** | **131.8** | **$325.00** | **$42,835.00** |

To account for the time that has elapsed since the attorneys' services were performed, the Court exercises its discretion to add interest to the final amount of attorneys' fees awarded. *Pickett*, 813 F.3d at 647. Thus, as part of the attorneys' fee award to Plaintiff, Plaintiff is also awarded interest on the total amount of fees at the annual average of the prime rate, compounded annually, from March 20, 2017—the date of the Court's order on Plaintiff's motion for summary judgment—until the date of this order. *See Dupuy v. McEwen*, 648 F. Supp. 2d 1007, 1018-19

(N.D. Ill. 2009) (awarding interest on attorney's fee award at the annual average of the prime rate, compounded annually).

## CONCLUSION

For the foregoing reasons, the costs reflected in Plaintiff's bill of costs (R. 102) are GRANTED. Plaintiff's motion for attorneys' fees (R. 101) is GRANTED in part and DENIED in part as stated herein. Plaintiff is awarded $1,903.50 in costs. Plaintiff is awarded $42,835 in attorneys' fees plus interest as set forth herein.

ENTERED:

**Chief Judge Rubén Castillo**
**United States District Court**

**Dated: November 19, 2018**